# H. Gridley *v.* James A. Tucker.

The covenants in a deed are of themselves, a sufficient consideration for a promise.

Where a promissory note was given in consideration of certain covenants in a deed, which note was transferred to a third party, who recovered judgment on the same, and the covenants in the deed failed to be performed; held, that the failure to perform the covenants of the deed was not a bar to a recovery on the note, and the court would not injoin the execution on such a judgment.

A claim growing out of a breach of covenant, does not ordinarily assume any thing of the character of a debt or demand capable of being reduced to certainty by calculation, and therefore is not the subject of set off.

The rule in relation to executory contracts for the conveyance of lands is, that if the vendor fails to convey, according to the terms of his contract, the measure of damages is the value of the land at the time of the breach, and not the price fixed in the contract.

Where a contract is executed, and an action is brought upon the covenant of the deed after eviction, the measure of damages is the purchase money, with interest.

The facts of this case are sufficiently set forth in the opinion of the chancellor.

GEORGE WINCHESTER for complainants.

Where a vendee seeks a specific performance for a part to which title can be made, the court will compel performance. Waters *v.* Irwin, 9 Johns. Rep. 450; 6 Johns. C. Rep. 38, Compensation; 5 Cranch, 275; 9 Cranch 456, 494; Pratt *et al. v.* Law and Camp. Evans *et ux. v.* Kingberry *et ux.*

Where a purchaser cannot get a title to all he contracted for, if he can get the substantial inducement to the contract, he may insist upon taking a title to so much as the other party can give a good title to, with a reasonable compensation for what the party cannot convey. 2 Randolph 120.

Sett off. 1 Johns. Ch. Rep. 91; 14 Johns. Rep. 63.

If a vendor, who is unable at the time to convey, sue a vendee for the purchase money, the latter may have an injunction

18*

against the former, to stay proceedings, until he is able to convey. Fishback *v.* Williams, 3 Bibb, 343; 4 Bibb, 7.

Chancery may grant an injunction to stay proceedings at law until the defendant can procure a grant. Cooke 220; Simmons *v.* Land, Walker's Rep. 159, and 118, 119.

J. T. McMURRAN for defendant.

The CHANCELLOR.

The facts set forth by the complainant's bill are, that some time in the year 1835, he entered into a negotiation with the heirs of the late Robert H. Adams, for the purchase of a number of town lots, in the city of Natchez;—that he purchased from the defendant, McNeill and wife, the latter of whom was one of the heirs of said Adams, their undivided interest in said lots;—that he purchased at the same time from McNeill the interest of Wm. Adams, another of the heirs, and who was then a minor, McNeill giving to him a bond, with a covenant, that he would procure said Wm. Adams, when he became of age, to execute to the complainant a warrantee deed for his interest in said lots;—that he executed various notes to McNeil as the consideration, as well as for the interest of McNeil and wife, as for that of the said William Adams in said town lots;—that among said notes was one for three thousand and forty dollars, which was transferred to the defendant Tucker, who instituted suit thereon, and recovered a judgment at law;—that when said Wm. Adams became of age, McNeill wholly neglected and failed to procure said William to make a deed for his interest in said lots;—that in consequence of such failure, the complainant was compelled to apply (himself to said William for a deed for his interest in said lots, and had to pay him the sum of $2,730 in order to procure such conveyance.

An injunction was granted in this bill against Tucker's judgment, and the bill prays that the $2,730 so paid to young Adams on account of McNeill's failure to comply with his covenant may be set off against Tucker's judgment.

The defendant, Tucker, answers that he knows nothing about the facts charged in the complainant's bill;—that he became the *bona fide* holder of the note without any notice of the considera-

tion for which it was given, and insists that McNeill's failure to comply with his covenant may be set off against Tucker's judgment.

There is one deposition taken in the case, for the purpose of proving the payment made by the complainant to William Adams.

In this attitude the case was submitted for final hearing. If the complainant is entitled to any relief against the judgment of the defendant, (Tucker,) based upon the note given by the complainant to McNeill, it must be either because there has been a failure of the consideration for which the note was given, or because the money paid by Gridley to Wm. Adams to obtain the title which McNeill covenanted to procure, constitutes a proper subject of set-off against Tucker's judgment. I think a brief examination of these grounds will suffice to show that neither can be sustained. The defendant McNeill's covenant to procure a conveyance from Wm. Adams, constituted the whole consideration for the complainant's notes. The complainant has then all he contracted for, to wit, McNeill's covenant. He did not contract with him for the absolute title of young Adams to the lots; for his contract shows he knew the title was in another. Covenants in a deed are of themselves a sufficient consideration for a promise. 7 Mass. Rep. 19, Fowler *v.* Shever. There has not been, therefore, in legal contemplation, a failure of consideration.

That the set-off which the bill seeks to make cannot be admitted, I think is equally clear. Suppose the suit on the note had been brought directly in the name of McNeill, instead of his assignee, could the rights of Gridley growing out of McNeill's breach of covenant have been made the subject of set-off, either at law or in equity. Those rights would simply constitute an unliquidated demand for pecuniary damages, requiring the interposition of a jury to liquidate and assess the amount. A claim growing out of a breach of covenant does not ordinarily assume any thing of the character of a debt or demand capable of being reduced to certainty by calculation. That such a claim cannot be made the subject of a set-off at law, seems to be well settled. 2 John Rep. 150; Hepburn *v.* Hoag, Cm. C. 613; 2 J. J. Marshall 548. And courts of chancery follow the rule of law in this respect. 1 Duncan *v.* Lyon, 3 J. C. R. 351; 2 Edw. Ch. Rep. 731.

It is true it is but an usual exercise of equity jurisdiction to set off one demand against another, where the equity between the parties requires it, and where the demand proposed to be set off is fixed and ascertained, and may be liquidated by mere calculation; yet if it be unliquidated it cannot be so set off, whatever may be its connection with the matter in controversy—for the court will not first liquidate the matter and then make the set off, especially where there is a plain remedy at law. Collins *et al.* v. Farquar, 3 Mon. Rep. 87. An exception to this rule seems to be where one of the parties to independent covenants becomes insolvent, so that the remedy at law would be fruitless, or some other circumstance rendering the aid of a court of equity indispensably necessary to prevent a failure of justice. 2 Litt. Rep. 72; 2 Paige 581, Lindsy v. Jackson. In such case it seems a court of equity would injoin a party from proceeding, until the matter of set off could be liquidated and determined at law. Nettle v. Elkins, 2 McChord's Ch. Rep. 184. If then it appears that the set off which the complainant seeks to make, could not have been made against the original payee, (McNeill,) it would seem, *a fortiori*, it cannot be made against the defendant, (Tucker,) who obtained the note upon which the judgment is founded in the usual course of trade, without notice of any equities between the original parties.

The right of set-off is not an equity which the original debtor may at all events assert against the assignee of the debt; such right does not necessarily attach to the debt, and follow it into whose soever hands it may come. Green v. Darling, 3 Mason 202; Walcott v. Sullivan, 1 Ed. Ch. Rep. 403. The claim of an original debtor to a set off against a *bona fide* assignee of the debt, should not be favored, except upon principles of strict right or rules of positive law. I am aware that the statute of this state has extended the right of set-off to the maker of even commercial paper, beyond the limits of the common law; but I am not disposed to enlarge its application, and even its ample folds do not cover the present case. The objection that the complainant's claim of set-off consists in unliquidated damages, is not obviated by the fact that the complainant was compelled to pay $2,730 to obtain the title from William Adams, which McNeill had cov-

enanted to obtain for him. This would be to let the complainant assess his own damages, and fix the measure of his own redress, according to his conceptions of his own rights and interests. It is moreover liable to the objection that it does not constitute the true legal criterion for fixing the *quantum* of damages. McNeill's failure to procure a deed of conveyance from young Adams when he became of age, was a breach of his covenant, for which Gridley had an immediate right of action at law, and his measure of damages would have been the value of the town lot at the time of the breach, and not the price which Gridley was to give McNeill, nor which he might choose afterwards to give to young Adams. The rule in relation to executory contracts for the conveyance of lands is, that if the vendor fail to convey according to the terms of his contract, the measure of damages is the value of the land at the time of the breach, and not the price fixed in the contract. Hopkins *v.* Lee, 6 Wheaton, 109, 118.

I am aware that there is some diversity of opinion with respect to this subject. A different rule has been laid down in Kentucky and some of the other states; but I consider the weight of both principle and authority is in support of the rule as declared by the supreme court of the United States, in the case before mentioned. That this is the rule in relation to contracts for the conveyance of personal property seems to be generally conceded ; and I am unable to perceive any sound reason for the application of the rule in one case and not in the other. If the rule were otherwise, it would in many cases afford the vendor encouragement to profit by an exercise of bad faith, whenever the land rose in value, between the dates of the contract and the time fixed for its execution: he would only have to refuse compliance, and pocket with impunity the enhanced value. The morality as well as the law of the contract certainly require that it should be discharged in good faith. With respect to an executed contract for land in an action upon the covenant of the deed after eviction, the rule of damages is different. There the purchase money with interest is the measure of the vendee's redress. The reason in favor of the distinction is obvious: A vendor who has executed his contract in good faith should not be held accountable for more than he received; but one who is attempting to turn his own bad faith into

pecuniary advantage should be held responsible to the extent which a faithful performance of the contract would have operated in favor of the vendee.

From this view of the case, I am of opinion that the injunction should be dissolved, and the complainant's bill dismissed at his costs.