LINDSAY and others *vs.* JACKSON and McJIMPSEY.

Equity requires that cross demands should be set off against each other.

And in a case not within the statute of set-off, chancery will permit an equitable set-off, if, from the nature of the claim, or the situation of the parties, justice cannot be obtained by a cross action.

The insolvency of one of the parties is a sufficient ground for the court to exercise its equitable jurisdiction, in allowing an equitable set-off.

And a set-off will be allowed, on the application of the complainant, where the defendant is insolvent; although the debt of the complainant to the defendant is not due.

Otherwise, if the debt of the defendant to the complainant is payable at a future day.

October 4th.

THIS was an appeal from a decision of the vice chancellor of the first circuit. In May, 1831, the complainants gave to the defendants two negotiable promissory notes, for the sum of about $1500 each, payable in six months, without interest. About the same time the defendants became indebted to the complainants, on an acceptance for $4000, payable on the 13th of June. A few days before this acceptance became due, the defendants became insolvent, and stopped payment. In July, 1831, the complainants filed their bill in this cause to restrain the defendants from negotiating or transferring the notes; and praying that the amount to become due thereon might be set-off, or applied in part satisfaction of the $4000 due on the acceptance. An injunction having been granted, according to the prayer of the bill, the defendants applied to the vice chancellor for a dissolution of the same. The vice chancellor denied the motion; and from that decision, the defendants appealed to the chancellor.

*B. F. Butler*, for the complainants.

*J. Hoyt*, for the defendants.

THE CHANCELLOR. There is a natural equity that cross demands should be off-set against each other; and that the balance only should be recovered. This was the rule of the civil law, and it is now adopted and preserved as the law of those countries, where the principles of the civil law prevail.

1831.

Lindsay
v.
Jackson.

(Code Nap. lib. 3, tit. 3, § 4. Institutes of Law of Spain, lib. 2, tit. 11, ch. 2, § 6. Van Der Linden's Inst. of Law of Holland, lib. 1, ch. 18, § 4. 2 Bell's Com. on Law of Scotland, ch. 4, § 2, p. 124.) By the common law of England, however, this natural equity was not allowed or enforced in the courts of law; but each party was left to recover his demand in a separate action. As a general rule, the court of chancery followed the rule of law; and after the statute had permitted set-offs to a certain extent, in suits at law, this court also adopted and acted on that principle. But the court of chancery, even before the statute, recognized the principle of natural equity, and acted upon it in cases where the law could not give a remedy in a separate suit in consequence of the insolvency of one of the parties. Thus in *Hawkins* v. *Freeman*, (2 Eq. Ca. Abr. 10,) which was decided by Lord Macclesfield five years before the statute of set-offs was passed, the court of chancery interfered to enforce this natural equity, as between the administrator of an insolvent estate and the complainant, between which complainant and the intestate there were mutual demands. The same principle of natural equity was recognized by Lord Chief Justice Hale many years before. *See Chapman* v. *Derby*, 2 Vern. 117.) And at this day, if the court finds a case of natural equity, not within the statute, it will permit an equitable set-off, if, from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by a cross action. (*See Piggott* v. *Williams*, Mad. & Geld, R. 95.)

Where there are mutual demands between the parties which cannot be set-off under the statute, but which a court of equity may compensate or apply in satisfaction of each other without interfering with the equitable rights of any person, the fact that one of the parties is insolvent has frequently been held a sufficient ground for the exercise of the equitable jurisdiction of the court of chancery. *Vide Lord Lanesborough* v. *Jones*, 1 P. Wms. 325.) In *Pond* v. *Smith*, (4 Conn. R. 302,) the supreme court of Connecticut held that the insolvency of one of the parties was a sufficient ground for the interference of a court of chancery to off-set mere legal demands against each other, although they

were so situated as to be incapable of being set off at law; and that the complainant ought not to be left to pursue his legal remedy against the defendants, when, from their insolvency, no satisfaction of his demand could be thus obtained. And in *Searchet* v. *Admr. of Searchet*, (2 Hamm. Ohio R. 320,) the supreme court of Ohio, on a bill in equity, permitted the complainants to off-set an equitable balance due to them from their co-partner, against a joint bond given by them to him; although, from the unliquidated nature of their claim, there could be no set-off at law. In *Collins* v. *Farquar*, (1 Litt. R. 153,) the court of appeals in Kentucky recognized the principle that the insolvency of the defendant will, in equity, give the court jurisdiction to decree a set-off of a demand against him, which might be recovered in an action at law, if he was solvent. And in delivering the opinion of the same court, in the case of *Robbins* v. *Hawley*, (1 Monroe's R. 194,) Judge Owsley says: "Robbins is admitted to be insolvent, and Dodge must be understood from the proceedings to be out of the country; and it will not be denied but that those facts are sufficient, in general, to warrant a court of equity in taking cognizance of a cause, for the purpose of setting off demands, which, from a lack of connexion, could not otherwise be decreed in a court of equity." (*See also Prior* v. *Richards' Admr.* 4 Bibb's R. 356, *and Ball* v. *Townsend*, Litt. Sel. Ca. 325.) The same principle is recognized in the law of Scotland, where, in ordinary cases, a debtor is not allowed to avoid the payment of what is liquidated and payable, during a long litigation on an unliquidated counter claim; yet there is an exception to that rule, in case of bankruptcy. For a solvent debtor will not be compelled to pay the liquidated debt, and come in with the other creditors for his illiquid claim; but he may plead compensation. (1 Bell's Law Dict. 258, art. Compensation.) The general principles of set-off are recognized and authorized by a public statute in that country, as well as here. But the learned commentator on the law of Scotland says, the statute is in no degree exclusive of the operation of equity naturally falling under its rules; and that the insolvency of a party has always been admitted as a ground for administering an equitable remedy,

1831.

Lindsay
v.
Jackson.

uhknown to the ordinary course of law. (2 Bell's Con. 127.) In the case of *Simpson* v. *Hart.* ( 4 John. R. 63,) the court of errors in this state, on appeal from this court, permitted a set-off in a case where it was evident no set-off could have been plead at law, if the defendant had brought his action against the complainant on his judgment ; because the two judgments off-set were not between the same parties. Judge Spencer, who delivered the opinion of the court of errors in that case, considers the fact of the insolvency of the defendant a material allegation in the cause, and puts the decision substantially on that ground.

It is true that Judge Story, in the case of *Green* v. *Darling*, (5 Mason's R. 201,) refused a set-off in equity, because, by the law of the state where the contracts were made, one judgment could not be off-set against the other, under the statute. But it must be recollected he was administering the law of a state which had no court of equity ; and as no right of set-off had been declared by the laws of the state, and no court had been organized therein to give a remedy, except in the courts of law, the extent of the remedy showed the extent of the right as it existed in that state. In page 207, of the report, Judge Story says : " I do not speak here of cases where distinct equities arise from other sources, but upon the naked equity of distinct and unconnected debts, and independent of any, statutable regulations." He subsequently explains what he means by new or distinct equities. And I think it is pretty evident he does not mean to say that the total insolvency of the defendant might not be a sufficient equity to authorize a court of chancery to interfere, if the contracts had been made in a state where equitable jurisdiction was vested in any of its courts ; although he expresses no definite opinion on that question.

It remains to be seen whether the fact, that the defendants' notes against the complainants have not yet become payable, forms any valid objection to the claim of the latter to have them applied in payment of their debt which is now due from the defendants. As the notes are not on interest, there can be no injustice in compensating the defendants, for the amount

to become due thereon at a future day, by a present payment. The complainants alone had any interest in obtaining the time of credit which was given on these demands. It might present an entirely different question if the defendants' debt was now due from the complainants, who were seeking to compensate it by a claim against the defendants, payable at a future day. (*See Young* v. *Guy,* 10 J. B. Moore's R. 193.) But the case now under consideration seems to come within the principle laid down by Pothier, (Pothier on Ob. 590,) that a debt of a specific thing may be opposed to a general debt of the same kind, which necessarily includes the specific thing. He put the case thus; " I am your creditor for six pipes of wine of a particular vintage : you are my creditor for six pipes of wine generally. I may demand the six particular pipes, and therefore you cannot off-set the general debt for six pipes. But I may off-set my particular pipes, if I please, against yours, because I could turn them out to you in payment of the general debt." Here, the defendants could not claim present payment of their notes, due six months hence, and therefore it would be inequitable for them by an off-set, to compel the complainants to pay those notes before they became due. But as the debt of the defendants is due, and if they paid it immediately, according to their agreement, the complainants might, without any injustice to the other party, waive the time of credit which was for their own benefit, and pay the notes immediately with the money thus received, the defendants have no cause to complain of such a mode of compensating one debt by another.

Under the circumstances of this case, as disclosed in the complainants' bill, I think it would be inequitable and unjust to permit the defendants to dispose of these notes, either for their own private purposes, or in payment of their general or favorite creditors, leaving the complainants' debt unpaid. Although equality among creditors is equity, here is a prior and a paramount equity, which must first be provided for. An equity, which is distinctly recognized by the insolvent acts of this state which have also declared the other principle, and enforced it to a certain extent.

The decision of the vice chancellor in refusing to dissolve the injunction was therefore right. It must be affirmed, with costs; and the proceedings are to be remitted to the vice chancellor.