Jackson v. Bell.

JAMES JACKSON and PATRICK H. LAVERTY

v.

MIDDLETON BELL.

1. The mere non-residence of a plaintiff in a judgment at law, and the consequent inability of the defendant therein to serve process on him in other proceedings at law, is, of itself, no ground for staying the enforcement of such judgment.

2. Proceedings on a judgment at law will not be enjoined in equity, in order to give the defendant in such judgment an opportunity to set off or recoup a counter-claim, where such claim is unliquidated, and arose out of an entirely distinct transaction.

On motion to dissolve injunction. Heard on bill, answer and affidavits.

*Mr. James B. Vredenburgh,* for motion.

*Mr. Thomas N. McCarter, contra.*

THE VICE-CHANCELLOR.

The bill in this case is founded on a claim to a right of equitable set-off. The defendant, Bell, in December, 1878,

recovered a judgment in the supreme court of this state, against the complainants, in an action of trespass *de bonis asportatis*, and, at the time the injunction now sought to be dissolved was granted, was attempting to enforce it by seizure and sale of the property of the complainant Laverty. The trespass upon which Bell's recovery is founded was committed by seizing and selling his chattels under an execution issued against another person. Jackson was the plaintiff in that execution, and Laverty executed it as sheriff, under Jackson's direction, after receiving indemnity. The bill avers that Jackson has a counter-claim for damages against Bell, for taking and carrying away a large quantity of personal property, which he held, by virtue of a chattel mortgage, as security for a large debt; that the facts in proof of his claim only recently came to his knowledge, and that, since their discovery, he has been unable, in consequence of Bell's residence being in the state of New York, to institute a suit against him in the courts of this state. The bill also charges that Bell is insolvent, and, if he is permitted to compel payment of his judgment, a recovery by Jackson against him will be fruitless. It prays that Bell may be restrained from enforcing his judgment until he accepts service of process at the suit of Jackson, and, also, until such suit shall have been determined, in order that, if a recovery is had, Bell's judgment may be paid by recoupment.

Bell's answer attempts a denial of all the facts of the complainants' case except his non-residence; but, in respect to the one most important—insolvency—it can only be regarded as an attempt. It lacks both frankness and precision. If the facts stated in the bill present a case which, undisputed, gives the complainant a right to the remedy of equitable set-off, the injunction should not be dissolved.

The cross-demands in this case must, in equity, be considered as subsisting between the same parties. It is true Bell's recovery is against both Jackson and Laverty, but Laverty holds indemnity, and, if he should be compelled to

pay, he can, at once, compel Jackson to re-imburse him, so that, in fact, the ultimate liability must fall on Jackson alone.

The fact that Bell is a resident of a sister state, is no reason why he should be denied the fruits of his judgment, or even delayed in their collection; nor should we attempt to coerce him, by restraining him in the collection of his judgment, to come into our tribunals to litigate with his adversary. If, upon the case made by the bill, we would not enjoin one of our own citizens, we must not enjoin him. This court must give the same measure of justice to the citizens of a sister state that it metes out to its own. *Murray* v. *Toland, 3 Johns. Ch. 569; Rawson* v. *Samuel, 1 Cr. & Ph. 161.*

The remedy by set-off, as enforced in equity, is undoubtedly somewhat broader and more liberal than that given by statute, but it has limits. The mere existence of a cross-demand is not enough to establish a right to it, nor will the existence of an unsettled account, out of which a cross-demand may arise, be sufficient. *Hewett* v. *Kuhl, 10 C. E. Gr. 24; Whyte* v. *O'Brien, 1 Sim. & Stu. 551; Dodd* v. *Lydall, 1 Hare 337; Gordon* v. *Pym, 3 Hare 223; 2 Story's Eq. Jur. § 1436.* Nor will a suitor who has recovered damages at law for a breach of contract, be restrained in their collection, though he be a non-resident and insolvent, merely because he may hereafter be found to be indebted to the defendant on the adjustment of an unsettled account. *Rawson* v. *Samuel, ubi supra.* And even where the cross-demands are debts of fixed and certain amount, but had their origin in distinct and independent transactions, equity will not set-off one against the other unless such course is made necessary by some peculiar, equitable consideration, as, for example, where there has been a mutual credit given by each upon the footing of the debt of the other, so that a just presumption arises that the one is understood by the parties to go in liquidation or set-off of the other. *Dade* v. *Irwin, 2 How. 389*

Jackson *v.* Bell.

The ground upon which the remedy is claimed here is, it will be observed, the mere assertion of a right to damages. Not only is the amount unliquidated, but the right itself is unestablished, and, therefore, uncertain. The demand is a matter belonging exclusively to the common law courts; until established there by a judgment, this court can exercise no control over it. Where both demands have been established by the judgment of a competent court, so that the sums recoverable are fixed and certain, it is common practice for the common law courts to set-off one against the other. *Brown* ads. *Hendrickson, 10 Vr. 239.* And the same practice prevails in equity, regardless of the nature of the demand upon which the judgment is founded, whether it be a debt or a tort. *Williams* v. *Davies, 2 Sim. 461; Simson* v. *Hart, 14 Johns. 62.* But courts of equity will never set-off a claim for unliquidated damages against an ascertained sum established by a judgment; nor will they, as a general rule, stay the enforcement of a judgment in order that the defendant may have an opportunity to recover a counter-judgment. *Murray* v. *Toland, ubi supra; Winchester* v. *Hachley, 2 Cranch 342; Rawson* v. *Samuel, ubi supra; Waterman on Set-Off,* § *423; Kerr on Inj. 67.* The departures from this rule have been very rare indeed, and have occurred only in cases where the counter-claims have had a common origin and were so inseparably connected that one appeared to be the natural product or outgrowth of the other, and where it was manifest that, if one was permitted to be enforced without allowing the other, the party having the benefit of the enforcement, would derive a profit or advantage from his own wrong. That was the case in *Beasley* v. *Darcy, 2 Sch. & Lef. 403.* There a tenant owed his landlord rent, and the landlord had committed a trespass on the land which rendered it of less value, and prevented the tenant, to a certain extent, from getting his rent out of it. The landlord brought ejectment against the tenant, claiming a forfeiture of his term in consequence of the non-payment of the rent, and had a recovery. The tenant then sought relief in equity and obtained

Jackson v. Bell.

an injunction restraining the landlord from ejecting him; he also obtained an order directing an issue to be tried at law to ascertain what damages he had suffered by the landlord's trespass, and had a recovery for a sum nearly equal to the rent in arrear. He was subsequently permitted to redeem his term by recouping his damages against the rent. *O' Connor* v. *Spaight, 1 Sch. & Lef. 305*; *Piggott* v. *Williams, 6 Madd. 95*, and *Lord Cawdor* v. *Lewis, 1 Y. & C. 427*, are cases of the same class, standing upon the same principle, viz., that the claim and cross-claim sprang from the same transaction and were so perfectly united that one must be regarded as the natural consequence of the other.

But where the claims originate in separate transactions, or have perfectly independent sources—as, for example, where one party makes a claim for damages for the breach of a contract and the other sets up that the first is indebted to him for a balance due on an unsettled account; or where one party sues for freights for the transportation of certain goods and the other claims that he has suffered loss by the negligence of the first in the transportation of other goods —in such cases a court of equity will neither afford a remedy by set-off, nor stay the collection of a judgment founded on one until a counter-judgment has been recovered on the other. *Rawson* v. *Samuel, ubi supra*; *Stimson* v. *Hall, 1 H. & N. 831; Atterbury* v. *Jarvie, 2 H. & N. 114.*

Chancellor Kent, in *Duncan* v. *Lyon, 3 Johns. Ch. 351*, said a demand resting entirely in uncertain and unliquidated damages cannot be set-off against a debt. After quoting Lord Mansfield's remark in *Howland* v. *Strickland, Cowp. 56*, that not only the statute of set-off, but the reason on which it is founded, comprehends mutual debts only, he says: "A claim for uncertain and unliquidated damages is not a debt. This is the settled doctrine of the courts of law, and the same rule prevails in equity. No case can be found where a set-off has been allowed, where the demand was for uncertain damages. To authorize a set-off, the debt must be between the same parties, in their own right, and must

be of the same kind or quality, and be clearly ascertained or liquidated. They must be certain and determinate debts." This view was adopted in *Holbrook* v. *Receivers of American Ins. Co.*, *6 Paige 223*, where Vice-Chancellor McCoun, after quoting the rule just stated, said the demand to be set-off, must be one arising upon judgment, or upon contract express or implied, or for a liquidated sum, or be capable of being ascertained by calculation. Chancellor Walworth, on appeal, affirmed the correctness of the rule as thus stated (*6 Paige 226*), although he had previously, in *Lindsay* v. *Jackson*, *2 Paige 581*, said natural equity required that cross-demands [without limiting the scope of the terms] should be set-off against each other, and a recovery permitted only for the balance. It will be observed his language is broad enough to embrace demands of every variety or species; but such, obviously, was not his meaning. His language must be understood as applied to the demands then under consideration, and it will be seen that they were such as were not only within the policy of the rule as previously expounded, but within the express letter of the statute.

Applying these rules to the case made by the complainants' bill, it would seem to be clear that the complainants are not in position to demand the aid they seek. Both their right and the amount they claim are unestablished and unascertained. They do not pretend that their claim originated at the same time, nor in the same source, that their adversary's did, or that there is the slightest connection between the two claims. If they are entitled to the remedy by set-off, or to stay the hand of their adversary until they can recover a counter-judgment, it would be difficult to imagine a case of cross-demands in which a similar claim could not be successfully set up.

The injunction must be dissolved, and the bill dismissed, with costs.