BRADLEY vs. ANGEL, executor, &c.

A court of equity will, it seems, enforce a set-off of cross-demands where the defendant is insolvent, although the debt of the complainant to the defendant is not due. But the rule is otherwise if the debt of the defendant to the complainant is not due.

The complainants were indebted to the defendant's testator in the sum of between three and four thousand dollars, to recover which the defendant, as executor, brought an action at law. The complainants thereupon filed their bill to compel a set-off of certain notes given to them by the testator which were not yet due, and to restrain the action at law. The estate of the testator was insolvent. *Held*, nevertheless, that the bill could not be sustained.

THE bill in this cause was filed in May, 1843, by Amos Bradley, Javan Bradley, Chester Bradley, Lucius Bradley, and Benjamin Bradley, against Angel, the surviving executor of Justus Hall, deceased, praying that certain demands in favor of the plaintiffs might be set off against a demand due from them to the defendant's testator. The case was this:

From the 1st of September, 1834, to the 1st of April, 1837, Benjamin Bradley, one of the plaintiffs, and Justus Hall, the decedent, were partners in the mercantile business. On the day last mentioned their partnership was dissolved, and another partnership was formed, consisting of all the plaintiffs and Justus Hall. This firm continued until April, 1840, when it was

dissolved, and Mr. Hall purchased the partnership property, and gave the plaintiffs therefor his four promissory notes, one for $500 payable in one year, one for $500 payable in two years, one for $1000 payable in three years, and one for $1000 payable in four years. After the dissolution, Justus Hall, the testator, carried on the business until the 23d of April, 1841, when he died insolvent, the plaintiffs during that time having dealt with him at his store to the amount of $4000.

The plaintiffs alledged in their bill, that there was an agreement between them and Mr. Hall that the goods they should purchase of him should be applied as payment upon the notes given by him to them as before stated, in case any event should occur making it necessary for him to discontinue business, but this allegation was denied by the answer, and there was no proof to sustain it. The defendant in his answer insisted that the stock of goods purchased by Mr. Hall as aforesaid was old and unsaleable ; that at the time of the sale, and as an inducement thereto, it was agreed that the plaintiffs should purchase of him all the merchandize they might need for their families or the operatives in their employ, and at the close of every six months should execute drafts on New-York for the balance due from them to Mr. Hall. A witness testified that he told one of the plaintiffs that Hall had made a foolish trade in buying out the goods, and the reply was that the pay would be easy, as the plaintiffs were going to do their trading with him, and were to pay him every six months.

After deducting the note of $500 falling due to the plaintiffs in April, 1841, with the interest thereon, and the interest accruing and due on the other three notes *which were not due*, there was a balance of between three and four thousand dollars due from the plaintiffs to the estate of Mr. Hall, to recover which the defendant, as executor, commenced a suit in October, 1841, and the plaintiffs thereupon filed this bill to compel a set-off of the three last notes above mentioned, and for an injunction against the suit at law. The vice chancellor of the eighth circuit dismissed the bill, and his decree was affirmed by the

Bradley *v.* Angel.

supreme court sitting in the eighth district. The plaintiffs ap-
pealed to this court.

*S. Stevens,* for appellant.

*J. Dickson,* for respondent.

GARDINER, J. The vice chancellor and the supreme court
have adjudged that the complainants have no claim against the
estate of the decedent, Justus Hall, on account of the old debts
of Hall & Bradley and J. Hall & Co., or either of them. There
is nothing in the pleadings or proofs to impugn this decision.
I shall assume it to be correct upon this question, which is one
of fact merely.

The set-off claimed by the complainants, of the three notes
made by Hall, mentioned in the pleadings, was undoubtedly the
occasion of filing the bill, and presents the only important ques-
tion in the cause. One of these notes matured on the 28th of
April, 1842, the second on the 28th of April, 1843, the third on
the 28th of April, 1844, in the aggregate amounting to $2500.
In October, 1841, the executors of Hall commenced a suit at
law against the complainants, for a balance of account due to
the estate of their testator, for goods sold to them upon a credit
of six months. And the complainants insist in their bill upon
the right in equity to set off these notes against the demand of
the executors, upon the ground that their debtor is dead and
his estate insolvent.

The proposition is, in effect, to change the contract of the
parties, in some of its most important provisions, in order to
meet a supposed equity arising from matters ex post facto.

If we except a class of decisions depending upon the language
and construction given by the English courts to their bankrupt
act, it is not claimed by the complainants that there is any
adjudged case in this country or England, that carries the doc-
trine of equitable set-off to this extent; but it has been held in
this state that A. having a demand against B. which is *due,*
and B. one against A. not due, A. may in equity compel a set-

off if B. is insolvent, notwithstanding, *Lindsay* v. *Jackson*, (2 *Paige*, 581, *and cases cited.*) The principle thus settled, it is insisted, will embrace the present case.

If this reasoning is just, it would prove that the courts had gone too far already, in varying the agreement of parties, and would be to my mind a strong argument against extending the doctrine to new cases. But there is no analogy between the case cited and the present. Where a debt is *due* from an insolvent debtor, the right of the creditor to payment is absolute. Natural equity and the law unite, in binding the debtor to a fulfillment of his obligation. If the latter holds a demand against his creditor not due, he has no right to retain it, as an investment. The law by sequestration and sale would compel him at once, to apply the proceeds in discharge of the debt due from him. Equity by compelling a set-off, under such circumstances, with the consent of the person entitled to the credit, and where third persons are not injured, follows the law. It creates no new obligation, and deprives the insolvent of no right, or privilege, which he could justly exercise. This distinction is recognized in the case cited. By allowing a set-off in this case, the executors would be deprived of a legal right, secured to their testator by contract, and the complainants would obtain payment of their debt before it became due, and to the prejudice of other creditors of the decedent.

By the agreement and understanding of Hall and the complainants, the price of the goods purchased by the latter was to constitute a fund applicable to the payment of all debts of Hall without distinction. The complainants assumed, therefore, the risk of the death, and insolvency of the testator, and have no equity, natural or otherwise, to claim a preference, in opposition to their contract, and to the prejudice of other creditors.

The judgment of the supreme court should be affirmed.